Filed 2/28/25  In re Jose C. CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re JOSE C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JOSE C.,<br><br>　　　Defendant and Appellant. | A169122<br><br>(Contra Costa County<br>Super. Ct. No. J1900972) |

In April 2021, Jose C. was adjudged an indefinite ward of the juvenile court for committing murder.  (Welf. & Inst. Code, § 602; statutory references are to this code unless otherwise indicated.)  Jose was committed to the Division of Juvenile Justice (DJJ) for 15 years.  Due to the closure of the DJJ in 2023, the court held another disposition hearing and committed Jose to the Briones Youth Academy Secure Pathway.  Jose appeals the 2023 order, contending the juvenile court erred by setting a baseline term of confinement for Jose's murder offense at six years, 11 months, beginning on the date Jose arrived at the DJJ.  (See § 875, subd. (b) (§ 875(b)).)  Seeking remand and a new disposition hearing, Jose posits that this baseline exceeds the term allowed by law.  We affirm the order.

1

## BACKGROUND

### *Wardship Petition and Original Disposition*

On November 8, 2019, the District Attorney filed a petition alleging Jose came within the juvenile court's wardship jurisdiction due to his commission of two felonies:  murder with malice aforethought (Pen. Code, § 187, subd. (a)); and attempted second degree robbery (*id.* at §§ 211 & 212.5, subd. (c)).  The petition contained enhancement allegations for felony murder (*id.* at § 190.2, subd. (a)(17)) and use of a firearm causing great bodily injury (*id.* at §§ 12022.53, 246, 12034, subds. (c)–(d)).  The petition was accompanied by a motion to transfer Jose's case to adult court.

Facts supporting the petition are set forth in a prior opinion by this court, *In re Jose C.* (Apr. 3, 2023, A165110) [nonpub. opn.] (*Jose I*),[1] but a brief summary suffices here.  On November 5, 2019, two teenagers, David and Alicia, were shot while attempting to sell a $10 roll of marijuana to a person named Juju, who arrived at the agreed location with Jose.  (*Jose I*, at pp. 2–3.)  David survived but Alicia died from her injury.  David reported that he knew Jose from school and that both assailants were friends with another juvenile named Jade, who used to be close with Alicia before they had a falling out.  (*Id.* at p. 2.)  In the aftermath of the shooting, Jose incriminated himself in text messages that he sent to Jade, which she shared with police.  (*Id.* at pp. 3–4.)  Jade reported that Jose admitted to her that he shot the victims and hid the gun in a vent at his grandmother's house.  (*Id.* at pp. 4, 6.)  Jose, who had connections to the Norteño street gang, made additional incriminating statements during a police interview, although he denied being

---

[1]  For purposes of background, we take judicial notice of our prior unpublished opinion in this case.  (Evid. Code, § 452, subd. (d); Cal. Rules of Court, rule 8.1115(b).)

the shooter, and when officers searched his grandmother's home, they found a chair under a vent that was partially unscrewed. (*Id.* at pp. 5–6.)

In March 2021, Jose entered a plea of no contest to second degree murder, other allegations against him were stricken, and the transfer motion was withdrawn. A disposition hearing was held on April 26, in which the juvenile court declared Jose an indefinite ward of the court and committed him to the DJJ for a maximum confinement of 15 years. In reaching this disposition, the court found that the shootings were a " 'planned and coordinated event,' " and that Jose and his coresponsible " 'lured' " the victims to a cul-de-sac, where one of them opened fire. (*Jose I, supra,* at p. 8.) The offense was " 'of great severity, obviously,' " the court found, as it took the life of a young woman and not only wounded her boyfriend but caused long-term psychological injuries. (*Ibid.*)

Jose was transported to the DJJ on September 14, 2021.

### *Juvenile Justice Realignment*

While Jose was at the DJJ, California was in the process of implementing juvenile justice realignment legislation. (See generally, *In re Jose R.* (2024) 102 Cal.App.5th 839, 845–847.) Beginning July 1, 2021, responsibility for juvenile offenders shifted from the DJJ to the county level. (*In re M.B.* (2024) 99 Cal.App.5th 435, 448 (*M.B.*).) The DJJ was required to close, and wards who met specified criteria could be committed instead to a secure youth treatment facility (SYTF). (*Jose R.,* at p. 845.) The procedure for committing a ward to an SYTF is set forth in section 875, which requires the court to set both a "baseline term of confinement" (*id.,* subd. (b)), and a "maximum term of confinement" (*id.,* subd. (c)). Jose's appeal pertains to the requirements for establishing a baseline term of confinement under section 875(b).

3

Section 875(b)(1) provides that the baseline term of confinement for a ward shall be "based on the most serious recent offense for which the ward has been adjudicated," and "shall represent the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community." This statute requires the court to utilize "offense-based classifications" approved by the Judicial Council to determine the baseline term, and directs that, pending adoption of those classifications, the court shall use discharge consideration date guidelines that the DJJ used prior to its closure. (§ 875(b)(1), citing Cal. Code Regs., tit. 9 (9 Regs.), §§ 30807–30813 [DOJ discharge date guidelines].) Once the baseline term is set, it is "subject to modification in progress review hearings." (§ 875(b)(1).)

Section 875(b)(2) establishes additional requirements for setting a baseline term of confinement for a ward transferred from the DJJ to an SYTF. First, the term "shall not exceed a youth's projected juvenile parole board date . . . at the time of their transfer." (§ 875(b)(2), citing 9 Regs., § 30800(12) [defining projected juvenile parole board date].) Second, these wards "shall receive credit against their [SYTF] baseline term for all programs completed or substantially completed at the [DJJ]." (§ 875(b)(2).)

***Jose's Second Disposition Hearing***

In April 2023, the juvenile court recalled Jose's DJJ commitment, and in May the court initiated a second disposition hearing. On May 3, the court found that Jose was an indefinite ward of the court, committed him to the Briones Youth Academy Secure Pathway for a maximum term of 15 years to life or until he reached age 25, and calculated that Jose's remaining maximum custody time after credit for time served was 11 years and 146 days. The court also found that under the discharge consideration date

4

guidelines that had been utilized at the DJJ, Jose's baseline term of commitment for his current offense was seven years.  (See 9 Regs., § 30807.)

On August 21, 2023, the court held a hearing to reconsider the baseline term of confinement for Jose's offense under new guidelines that had been adopted in rule 5.806 of the California Rules of Court (rule 5.806).  Jose argued that the new "matrix" gave the court flexibility to set his baseline term anywhere between four and seven years, and that his background, challenges, and participation in treatment at the DJJ weighed in favor of a baseline term of five or six years.  The prosecutor argued there was no compelling reason to reduce the baseline term below seven years, emphasizing the severity of Jose's current offense, his gang involvement, and evidence that he committed several new offenses while at the DJJ.  At the August 21 hearing, there was also some confusion about Jose's projected parole board date, as various DJJ reports listed different projected dates.  The matter was continued until September 13 for the court to consider further the parties' arguments and evidence.

At the beginning of the September 13 hearing, the juvenile court found that Jose's projected juvenile parole board date was August 2028, based on the most recent information from DJJ.  Jose's counsel agreed, but raised a new issue regarding how properly to calculate Jose's baseline term of confinement.  Defense counsel argued that the start date for the baseline term should be the date Jose was accepted at DJJ rather than the date he arrived there.  Counsel believed that Jose was accepted at DJJ on June 11, 2021, and argued that whatever term the court settled on should begin to run from that date.  The prosecutor disagreed, as did the juvenile court.  The court observed that the statutory scheme requires the baseline term not to exceed the "youth's projected juvenile parole board date," without going "into

5

acceptance dates, or transfer dates, or commitment dates." The code does make clear, the court continued, that the baseline term is designed to address rehabilitation, "and that doesn't start until [the ward] is actually at the facility."

Ultimately, the court ruled that Jose's baseline term of confinement was six years, 11 months, starting from the date that Jose began serving his time at the DJJ. In reaching this conclusion, the court reviewed and confirmed its prior findings regarding Jose's extensive rehabilitative needs. Addressing Jose directly, the court also explained that Jose would have the same baseline he had at the DJJ; the court was not increasing that term, as it began to run on the day Jose arrived at DJJ. Thus, the baseline term started on September 14, 2021, and the projected completion date was set at August 14, 2028.

## DISCUSSION

Jose argues the juvenile court erred in its calculation of Jose's baseline term of confinement, characterizing the alleged error as an abuse of discretion. We reject this claim, as it is unsupported by the language of section 875(b) or other legal authority.

The record shows that the baseline term of confinement calculated by the juvenile court complies with directives set forth in section 875(b). The offense-based classification for Jose's current murder offense is four to seven years. (Rule 5.806.) The term of six years, 11 months falls within that range, and the court made findings to support its determination that this term is appropriate to meet Jose's rehabilitative needs. Moreover, the baseline term calculated by the court does not exceed Jose's projected parole board date of August 2028, as the term is set to expire on August 14, 2028. Jose does not challenge any finding that the court made to support these calculations.

6

Instead, Jose argues that the juvenile court erred in finding that the baseline term of confinement began to run on the date Jose arrived at the DJJ, rather than on June 21, 2021, the date Jose was accepted by that program. Building on this premise, Jose posits that the baseline term set by the juvenile court exceeds the maximum term allowed by law because even at the high end of the offense-based classification for murder (seven years), the baseline term must end on or before June 21, 2028. As this argument rests on a false premise, Jose's claim of error necessarily fails.

Section 875(b) does not expressly or implicitly require that the baseline term of confinement begin to run on the date that the youth was accepted into an SYTF or the DJJ. As the court observed, section 875(b) does not address starting dates specifically, but it does define the baseline term as "the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community." (§ 875(b)(1).) It appears obvious to us that a facility cannot begin to meet the developmental and treatment needs of a ward until the ward arrives at the program. Moreover, it is only for "programs completed or substantially completed at the Division of Juvenile Justice" that a youth may receive "credit against their secure youth treatment facility baseline term." (§ 875(b)(2).) We do not see how a person can be considered in the process of completing a DJJ program before he or she has even arrived at the DJJ facility.

Importantly, the baseline term of confinement "is not a maximum term." (*M.B.*, *supra*, 99 Cal.App.5th at p. 468.) The "SYTF scheme has its own detailed provisions governing the setting of a maximum term of confinement," and precommitment credits are applied against this term pursuant to section 875, subdivision (c). (*M.B.*, at pp. 469–470.) The baseline

7

term, by contrast, represents custody time necessary to address the ward's "developmental and treatment needs," and to prepare the ward for discharge to a period of probation. (*Id.* at p. 468; § 875(b).) Consistent with these goals, a youth who is transferred from the DJJ receives credit against the baseline term for programs completed there. (§ 875(b)(2).) However, precommitment credits are *not* applied against the baseline term, but only against the maximum term of confinement. (*M.B.*, at p. 470.) Thus, the court's finding that Jose's baseline term of confinement for his murder offense began to run on the date he arrived at the DJJ is consistent with the statutory language of section 875(b) and the overall scheme.

Jose argues that the beginning date of his baseline term of confinement must be the date he was accepted for treatment by the DJJ in order to comply with the requirement in section 875(b)(2) that the baseline term "shall not exceed" the youth's "projected juvenile parole board date" at the time he was transferred from the DJJ. We disagree.

The term "projected juvenile parole board date" is defined in the Code of Regulations as: "an interval of time in which a youth may reasonably and realistically be expected to achieve readiness for parole. It is not a fixed term or sentence, nor is it a fixed parole release date. . . ." (9 Regs., § 30800(12).) In this case, Jose's projected parole board date was August 2028. Thus, the baseline term calculated by the juvenile court does not exceed the projected parole board date that was established for Jose at the time he was transferred from DJJ.

Jose acknowledges that his projected parole board date at the time of his transfer was the month of August 2028, and he does not argue on appeal that the baseline term set by the juvenile court exceeds that projection. Instead, Jose takes the view that the baseline term of confinement must run

from the date of a youth's acceptance to the DJJ because the projected juvenile parole board date is calculated from the date of the ward's acceptance by the Youth Authority. (9 Regs., § 30815(c).) We disagree with Jose's apparent assumption that a projected parole board date that was calculated under the former DJJ system is the functional equivalent of the baseline term of confinement. The procedure for establishing a baseline term of confinement for a ward committed to an SYTF is set forth in section 875, not the Code of Regulations.

In his reply brief, Jose argues that juvenile courts should use the same manner of calculation that is used by the Board of Juvenile Hearings, as reflected in their regulations. Tellingly, Jose relies only on the regulation indicating that projected parole board dates are calculated from the date of acceptance into the DJJ; he does not actually address or purport to apply the regulatory procedures used to calculate a projected parole board date. (See, e.g., 9 Regs., § 30815(g) [Board may adjust parole consideration date in response to individual needs of ward]; *id*. at § 30815(i) [authorizing deviation from prescribed parole consideration date].) In any event, juvenile justice realignment legislation preserves the ward's parole consideration date as of the time of the transfer from DJJ, but it does not incorporate the procedures by which that date was calculated.

In his reply brief, Jose also invokes section 726, subdivision (d)(5), which defines " 'Physical confinement' " to include a placement at juvenile hall. Jose intimates that the juvenile court violated section 726 because the finding that the baseline term of confinement began to run when Jose arrived at the DJJ extended his maximum term of physical confinement by denying him credit for time he served at juvenile hall while waiting to be transported to the DJJ. This argument confuses two distinct terms that were set at Jose's

9

disposition hearing, the baseline term of confinement and the maximum term of confinement. The maximum term of confinement "shall represent the longest term of confinement in a facility that the ward may serve," subject to specified limitations. (§ 875, subd. (c).) Jose has not challenged the juvenile court's calculation of Jose's maximum term of confinement. But a baseline term is not a maximum term, as we have discussed (*M.B.*, *supra*, 99 Cal.App.5th at p. 468), and Jose fails to show error in the calculation of his baseline term of confinement.

## DISPOSITION

The September 2023 disposition order is affirmed.

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.

*In re Jose C.* (A169122)

10